Scott Rosenberg, General Counsel
Adriene Holder, Attorney-in-Charge, Civil Practice
Hasan Shafiqullah, Attorney-in-Charge, Immigration Law Unit ("ILU")
Jennifer Williams, Deputy Attorney-in-Charge ILU
Gregory Copeland, Supervising Attorney, ILU
Sarah Gillman, Supervising Attorney, ILU
Ramya Ravishankar, Of Counsel, ILU
Allison Wilkinson, Of Counsel, ILU
THE LEGAL AID SOCIETY
199 Water Street – 3rd Floor
New York, NY 10038
Tel: 212-577- 3968
Fax: 646-365-9369
gcopeland@legal-aid.org

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Edisson Mauricio Barros Anguisaca, | Case No.: |
| Petitioner, | |
| vs. | Agency Number: 075-808-929 |
| Jefferson B. SESSIONS III in his official capacity as Attorney General of the United States;  Thomas DECKER, in his official capacity as New York Field Office Director for U.S. Immigration and Customs Enforcement; and Kirstjen NIELSEN, | **VERIFIED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**ORAL ARGUMENT REQUESTED** |
| Respondents. | |

1. Petitioner, Edisson Mauricio Barros Anguisaca ("Petitioner" or "Mr. Barros"), brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241; the All Writs Act, 28 U.S.C. § 1651; and Article I, Section 9, Clause 2 of the United States Constitution (Suspension Clause).

## PRELIMINARY STATEMENT

2. Mr. Barros is a forty-six year old national and citizen of Ecuador, father of two United States Citizen ("USC") daughters and husband who has lived in the United States since 1993.  *See* Exh. 1, Declaration of Paola Cecilia Barros & Exh. 2, Declaration of

Eileen Gicelle Barros.  On July 16, 2018, Mr. Barros was detained by Immigration and Customs Enforcement ("ICE") without prior notice of warning.  *See* Exh 1, Declaration of Paola Cecilia Barros.  Since Mr. Barros's detention by ICE on July 16, 2018, he faces imminent removal to Ecuador and permanent separation from his family. The Petitioner's daughter, Paola, suffers from a learning disability, unspecified anxiety disorder unspecified and other related medical issues. *See id.*.  The Petitioner's daughter, Eileen, suffers from severity anxiety and was recently hospitalized for suicidal ideation and prescribed anti-depressant medication.  *See* Exh. 2, Declaration of Eileen Gicelle Barros; *see also* Exh. 6, School and medical records for Paola and Eileen including records relating to the medical conditions suffered by the Petitioner's daughter.

3.      As a result of the detention of their father, the Petitioner's daughters have suffered a severe adverse impact on their already-fragile mental health. *See* Exh. 1 and 2; *see also* Exh. 6.

4.      Upon information and belief, the Respondents detained Mr. Barros and seek to remove him from the United States based upon an order of removal that was entered on February 21, 2003.  *See* Exh 3, Copy of Order of Removal.  As is set forth more fully below, the Order of Removal is a legal nullity and therefore the instant proceedings violate Mr. Barros's statutory and due process rights.

5.      Pursuant to this Court's inherent powers in habeas corpus proceedings, Mr. Barros respectfully requests that this Court order his release from custody, enjoin Respondents from removing him from the United States, and stay his removal from the United States pending resolution of his Petition for habeas corpus. The Petitioner also

respectfully requests that the Court order the Respondents to transport him back to the New York City area for the duration of these proceedings.

## JURISDICTION & VENUE

6.     This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241; 28 U.S.C. § 1331; Article I, § 9, cl. 2 of the United States Constitution; the All Writs Act, 28 U.S.C. § 1651; the Administrative Procedure Act, 5 U.S.C § 701; and for injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Petitioner's current detention as enforced by Respondents constitutes a "severe restraint[]" on [Petitioner's] individual liberty," such that Petitioner is "in custody in violation of the . . . laws . . . of the United States." *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241.

7.     While the courts of appeals have jurisdiction to review removal orders directly through petitions for review, see 8 U.S.C. § 1252(a)(1), (b), the federal district courts have jurisdiction under 28 U.S.C. § 2241(d) to hear habeas claims by non-citizens challenging the lawfulness or constitutionality of Immigration and Customs Enforcement ("ICE") conduct. *See, e.g., Demore v. Kim*, 538 U.S. 510, 516–517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

8.     The Constitution, the United States Code, together with the relevant case law amply demonstrate that the instant proceeding has been properly commenced in the Southern District of New York in all material respects. This Court has jurisdiction over all Respondents, each of whom is a proper respondent under 28 U.S.C. § 2243. Moreover, the Southern District of New York is the proper forum for this action,

as it is the district with the most substantial connection to the parties, witnesses,

evidence, attorneys and circumstances underpinning the issues presented herein.

9.      As the Constitution states, "[t]he Privilege of the Writ of Habeas Corpus shall not

be suspended, unless when in Cases of Rebellion or Invasion the Public Safety may

require it."   *See* U.S. Const. art. I, § 9 cl. 2.  Habeas corpus thus is a bedrock

Constitutional right that our Founding Fathers considered to be important at the creation

of our Republic.  Presently, its contours are set forth in the habeas corpus statutes, which

grant federal courts jurisdiction to review the legality of a detention, and, if warranted,

to order release of a petitioner. See 28 U.S.C. §§ 2241-2243.  The writ is the

"fundamental instrument for safeguarding individual freedom against arbitrary and

lawless state action."  *Harris v. Nelson*, 394 U.S. 286, 291 (1969).  "The scope and

flexibility of the writ – its capacity to reach all manner of illegal detention – its ability to

cut through barriers of form and procedural mazes – have always been emphasized and

jealously guarded by courts and lawmakers."  Id.  Hence, "the very nature of the writ

demands that it be administered with the initiative and flexibility essential to insure the

miscarriages of justice within its reach are surfaced and corrected."  Id.  (emphasis

added).

10.     Because of the vital role the writ plays in our democracy, and since the petitioner

is often in custody, "usually handicapped in developing the evidence needed to support

in necessary detail the facts alleged in [a] petition," the Supreme Court has repeatedly

recognized that "a habeas corpus proceeding must not be allowed to flounder in a

'procedural morass'" *Price v. Johnston*, 334 U.S. 266, 269 (1948).  Indeed, "[t]here is

no higher duty of a court, under our constitutional system, than the careful processing

- 4 -

and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law." *Harris*, 394 U.S. at 291-292.

11.     Venue is proper in the Southern District of New York.   Mr. Barros was detained by the Respondents on or about July 16, 2018 in Brooklyn, New York and is presently detained under the authority of the New York New York Field Office Director, Respondent Decker, within the jurisdiction of the Southern District of New York.  The New York Field Office initially detained the Petitioner at the Hudson County Correctional Center ("HCCC") in Kearny, New Jersey and, on or about August 14, 2018, transferred Mr. Barros to a facility in Louisiana  for the purpose of his deportation to Ecuador on, upon information and belief, August 17, 2018.

12.     Although the Respondents have now transferred the Petitioner to Louisiana this does not deprive the Court of venue. In *Antonio v. Sessions, III*, 2018 WL 3677891 (S.D.N.Y. August 1, 2018), the Court found that venue was proper in the Southern District of New York.  In that case, the Petitioner was detained by the New York Field Office and housed in the HCCC in Kearny, NJ.  The Court rejected the arguments by the government that venue was not proper in the Southern District of New York and found that "ICE's tendency to detain aliens in remote custodial facilities and then insist on applying the immediate custodian rule. For example, children separated from their parents at the Mexican border are transported to New York where they are held. The Court does not believe that this is accidental or random. Rather, the Court believes ICE may be attempting to take advantage of the immediate custodian rule to frustrate

detainees' connections to their support system of families and friends; retention of competent immigration counsel; and effective participation in the proceedings. This is not an appropriate for application of the immediate custodian rule." Id. at *4 (internal citations omitted). *See also, You v. Nielsen et al.,* Case 1:18-cv-05392-GBD-SN (S.D.N.Y. August 2, 2018)*; Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 493-94 (1973)(Under Braden, the Court should consider (i) the location where the events took place, (ii) where records and witnesses pertinent to the claim are likely to be found, (iii) the convenience of the forum for respondent and petitioner, and (iv) the familiarity of the court with the applicable laws.); *Mahmood v. Nielson,* 2018 WL 2148439 (AT)(S.D.N.Y. May 9, 2018)*; Abner  v. Sec'y of the Dep't of Homeland Sec.,* No. 06-cv-308 (JBA), 2006 WL 1699607 (D. Conn. June 19, 2006) ("naming the warden of the facility where [petitioner] is currently incarcerated would not serve the purpose of the immediate custodian rule because if named as respondent, the warden would have to look to [Federal Bureau of Immigration and Customs Enforcement] for  authority to release petitioner from detention as petitioner is held in that facility only on the authority of a BICE detainer")*; Farez-Espinoza v. Chertoff,* 600 F. Supp. 2d 488, 495 (S.D.N.Y. 2009) ("because Farez–Espinoza is being held by the Government—i.e., the Attorney General and DHS—and not the warden of the prison in which Farez–Espinoza currently is detained" the Secretary of DHS and Attorney General were proper respondents); *Romero v. Evans,* 280 F. Supp. 3d 835, 849 (E.D. Va. 2017) (immediate custody rule not because the warden of jail was not within immigration chain of custody and could not provide the relief sought so including him as a respondent would be a futility; even if the petitioner won a judgment requiring that a bond hearing be held, the

warden would not have any ability to provide the relief obtained)*; Bogarin-Flores v. Napolitano,* 12-CV-0399-JAH-WMC, 2012 WL 3283287, at *2 (S.D. Cal. Aug. 10, 2012) (Attorney General and DHS were the proper respondents, not the warden of the contract facility in which the petitioner was held)*; Roman v. Ashcroft, 340 F.3d 314, 320 (6th Cir. 2003)* (INS District Director for the area including the detention center was the proper respondent)*; Khodr v. Adduci,* 697 F. Supp. 2d 774, 776 (E.D. Mich. 2010) (finding ICE District Director to be a proper respondent)*; Abner v. Secretary of Dept. of Homeland Security,* No. 06-cv-308 (JBA), 2006 WL 1699607, at *3-4 (Dis. Conn. June 19, 2006) (rejecting Padilla's applicability, and finding Field Office Director to be proper custodian)*; Sabadi v. Chertoff,* No. C 05-01796 WHA, 2005 WL 1514122, at *3 (N.D. Cal. June 17, 2005) (ICE District Director, also known as the field office director, who would direct the county warden to release the petition was the proper respondent)*; Saravia v. Sessions,* 280 F. Supp. 3d 1168, at *__ (N.D. Cal. Nov. 20, 2017) ("Instead of naming the individual in charge of the contract facility—who may be a county official or an employee of a private non-profit organization—a petitioner held in federal detention in a non-federal facility pursuant to a contract should sue the federal official most directly responsible for overseeing that contract facility when seeking a habeas writ").

13.     In this case, the Petitioner resided in New York City prior to his detention by the Respondents.  The Petitioner was detained and is currently detained within the jurisdiction of the New York Field Office.  The Petitioner's entire family is in New York, The Legal Aid Society who now represents Mr. Barros and has offices in New York City and does not have offices in Louisiana, the events that resulted in the

Petitioner's detention on or about February 12, 2003, and his most recent re-detention on

or about July16, 2018 all occurred in New York.

**PARTIES**

14.     Petitioner, Edisson Mauricio Barros Anguisaca, is forty-six year-old national and

citizen of Ecuador who came to the United States in 1993. He has lived, worked,

married and has significant family and community ties in the United States. Mr. Barros

was unlawfully ordered removed in 2003, he has a pending I-130 Petition filed by his

U.S. citizen daughter and a pending Motion to Reopen before the Elizabeth Immigration

Court. He is currently in the custody of the Department of Homeland and facing

imminent removal to Ecuador after the Immigration Judge denied his request for a stay

of removal.

15.     Respondent Jefferson B. Sessions III is named in his official capacity as the

Attorney General of the United States. In this capacity, he is responsible for the

administration of the immigration laws as exercised by the Executive Office for

Immigration Review. Respondent Sessions routinely transacts business in the Southern

District of New York, is legally responsible for administering Petitioner's removal

proceedings and the standards used in those proceedings, and as such is a legal custodian

of Petitioner. Respondent Sessions' address is Attorney General of the United States,

U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, District of

Columbia 20530.

16.     Respondent Thomas Decker is named in his official capacity as the Field Office

Director of the New York Field Office for ICE within the United States Department of

Homeland Security. In this capacity, he is responsible for the administration of

immigration laws and the execution of detention and removal determinations, and is a

- 8

legal custodian of Petitioner. Respondent Decker's address is Office of Enforcement and Removal Operations, New York Field Office Director, 26 Federal Plaza, New York, New York 10278.

17.     Respondent Kirstjen Nielsen is named in her official capacity as Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, she is responsible for the administration of the immigration laws. Respondent Nielsen routinely transacts business in the Southern District of New York and supervises Mr. Decker. Respondent Nielsen's address is Secretary of Homeland Security, U.S. Department of Homeland Security, Washington, D.C. 20528.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

18.     Mr. Barros is a forty-six year old national and citizen of Ecuador. *See* Exh. 1, Declaration of Paola Cecilia Barros, and Exh. 2, Declaration of Eileen Gicelle Barros. In 1993, when he was twenty-one years old, Mr. Barros came to the United States seeking safety and stability. He entered without being inspected or admitted and moved to New York, where he found a community and built a life for himself.

19.     Mr. Barros met Michelle S. Charles, a United States Citizen ("USC") in 1996 and they quickly began a relationship. They fell in love and Mr. Barros and Ms. Charles were married on January 27, 1997 in a ceremony at the Bronx Courthouse attended by his family and her friends.

20.     Mr. Barros's wife filed an I-130 petition on his behalf. *See* Exh. 10, I-130 Petition Approval Notice dated February 14, 1997.

21.     Unfortunately, Mr. Barros's mother developed significant health problems in 2000 and required an operation. Mr. Barros's applied for and was granted advance parole to travel outside the country. His advance parole was approved indefinitely, with

no expiration date. *See* Exh. 4, Form I-512. Relying on this advance parole, Mr. Barros travelled to Ecuador to care for his mother while she underwent surgery. He returned to New York after about a month and was admitted into the United States without incident based on his approved advance parole.

22.     In 2003, Mr. Barros's father fell ill and he relied on the indefinitely approved Form I-512 advance parole to travel to Ecuador again. Unfortunately, Mr. Barros's father passed away. He remained in Ecuador for about a month to arrange for his father's funeral service and burial.

23.     Mr. Barros returned from burying his father to his family, including his two minor daughters, his home, and his business on February 12, 2003. He flew from Ecuador to John F. Kennedy International Airport, Jamaica, New York and presented his approved advance parole document. *See* Exh. 4. Customs and Border Patrol ("CBP") subjected him to secondary screening and he was interviewed by an agent.

24.     In secondary screening, Mr. Barros explained that he'd traveled on advance parole in order to visit his father, who'd just passed away. His advanced parole had no expiration date.  *See* Exh. 4, Form 512.  The agent interrogated him about his relationship with his wife. Mr. Barros described some disagreements with his wife and a tumultuous relationship, but he also explained that they'd decided to marry based on their love and attraction for each other and they remained married and committed to the relationship. However, at the conclusion of the interview, Mr. Barros was told he was inadmissible to the United States and he requested to see an Immigration Judge. Mr. Barros was immediately arrested and detained at Wackenhut Detention Facility that was, upon information and belief, located in Jamaica, Queens, New York.

25.     On February 13, 2003, the government issued a putative Notice to Appear ("NTA") placing Mr. Barros in removal proceedings. *See* Exh. 5, Notice to Appear. The NTA alleged that Mr. Barros "[a]pplied for permission to enter the United States at or near New York on or about February 12, 2003…At that time [he] requested to be paroled into the United States as a returning applicant for adjustment of status…[He had] sought to procure a visa, other documentation, or admission into the United States by fraud or by willfully misrepresenting a material fact, to wit: [he] engaged in a fraudulent marriage with a United States citizen by the name of Michelle Susan CHARLES with a date of birth of February 15, 1978 solely to obtain a benefit under United States Immigration Law…[He] did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document." *See id*. The NTA made no mention of the indefinitely approved Form I-512 advance parole upon which Mr. Barros relied when he travelled outside the United States to care for his father. Based upon these allegations, Mr. Barros was charged with inadmissibility under INA § 212(a)(6)(C)(i) (fraud or misrepresentation) and § 212(a)(7)(A)(i)(I) (immigrant without documents).  The NTA did not indicate a time or place for a hearing before an immigration judge. *See id*.

26.     About two weeks after Mr. Barros was interrogated at J.F.K. International Airport and detained, he appeared *pro se* before Immigration Judge Abrams on February 21, 2003 for his first court appearance. At this hearing, the fraud and misrepresentation allegation was withdrawn, *see* Exh. 5, NTA (notation in margin indicating "w/drawn" beside fraud and misrepresentation allegation), and the charge of inadmissibility under INA § 212(a)(6)(C)(i) was dismissed, *see* Exh. 3, Order of Removal, dated February 21,

2003 (noting that the order based on "212(a)(7) only"). Nonetheless, upon information and belief, Mr. Barros was pressured to withdraw his application for adjustment and the Immigration Judge found him inadmissible under 212(a)(7)(A)(i)(I). He was ordered removed from the United States to Ecuador. *See id.*

27.    Soon thereafter, Mr. Barros was deported and separated from his wife and two young daughters.

28.    Mr. Barros returned to the United States in 2003. He had two young daughters in New York who relied on him for financial and emotional support: Paola Cecilia Barros (born January 16, 1997) was six years old and Eileen Gicelle Barros (born June 24, 1998) was only four years old at the time. As he explained during his interrogation in secondary screening, Mr. Barros was committed to providing for his daughters and being a supportive presence in their lives. *See* Exh. 1, Declaration of Paola Cecilia Barros; *see* Exh. 2, Declaration of Eileen Gicelle Barros. He entered the United States in 2003 without inspection and returned to his family and home in New York.

29.    In the intervening years and with their father's support, Paola and Eileen progressed through the New York school system. *See* Exh. 1, and Exh. 2.

30.    Mr. Barros built up a business as a limousine driver and in 2015 he and two of his colleagues incorporated their own business, appointing Mr. Barros as the President of the corporation. *See* Exh. 7, Minutes of the Organizational Meeting of the Incorporator of Immediate Luxury Car and Limo Services, Inc.

31.    Mr. Barros and Ms. Charles ultimately divorced on August 11, 2015.

32.    Mr. Barros lived peacefully. He had absolutely no contact with law enforcement in the United States until one evening when Mr. Barros was walking his dog at night. As

they were crossing the street at a cross walk, a car sped toward Mr. Barros and his dog, and seemed about to run over Mr. Barros's dog despite the stop sign at the crosswalk. He flung the only thing in his hands – his keys – at the driver's window to get him to stop and pay attention. The driver then called the police, who arrested Mr. Barros for disorderly conduct as soon as they arrived without hearing his side of events. Mr. Barros was released and issued a Desk Appearance Ticket ("DAT") to appear before the Queens Criminal court on or about May 23, 2018. *See* Exh. 12, DAT & Discharge; *see also* Exh. 13, Certificate of No Criminal History in Ecuador.

33.     On July 16, 2018, Mr. Barros appeared again at the Criminal Court to continue and finalize his case. However, when Mr. Barros left the courthouse, ICE agents were waiting for him and he was immediately arrested and detained at the HCCC in Kearny, New Jersey.

34.     With the support of their community, Mr. Barros's family connected with counsel. Mr. Barros's eldest daughter, Paola, filed an I-130 petition on his behalf, which was received by USCIS on July 27, 2018. *See* Exh. 8, I-130 Petition and Receipt Notice. This application remains pending before USCIS. *See also,* Exh. 9, Letter of Support from the community including, but not limited to, elected officials.

35.     On July 31, 2018, Mr. Barros's counsel filed a Motion to Reopen his removal proceedings as well as a Request for Stay of Deportation. On August 15, 2018**,** Immigration Judge Tadal denied the Stay of Removal. Mr. Barros's Motion to Reopen remains pending before the Immigration Court.

Mr. Barros is facing immediate deportation to Ecuador. Upon information and belief, the Petitioner is scheduled to be deported to Ecuador on August 18, 2018 between the hours of 6:00am-9:00am.

## LEGAL FRAMEWORK

36.     It is well established that the Fifth Amendment entitles aliens to due process of Law[.]'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id*. at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against unlawful or arbitrary personal restraint or detention.").

37.     Due process therefore requires "adequate procedural protections" to ensure that the government's asserted justification for its conduct infringing on protected interests "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id*. at 690 (internal quotation marks omitted). In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention—to mitigate the risks of danger to the community and to prevent flight. *Id*.; *Demore*, 538 U.S. at 528.

38.     Other than as punishment for a crime, due process permits the government to take away liberty only "in certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (quotations omitted). Such special justification exists only where a restraint on liberty bears a "reasonable relation" to permissible purposes. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *see also Foucha*

- 14 -

*v. Louisiana*, 504 U.S. 71, 79 (1992); *Zadvydas*, 533 U.S. at 690.  In the immigration context, those purposes are "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (quotations omitted).

39.    Those substantive limitations on detention are closely intertwined with procedural due process protections. *Foucha*, 504 U.S. 78-80. Noncitizens have a right to adequate procedures to determine whether their detention in fact serves the purposes of ensuring their appearance or protecting the community. *Id.* at 79; *Zadvydas*, 533 U.S. 692; *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 949 (9th Cir. 2008). Where laws and regulations fail to provide such procedures, the habeas court must assess whether the noncitizen's immigration detention is reasonably related to the purposes of ensuring her appearance or protecting the community. *Zadvydas*, 533 U.S. at 699.

*Stays of Removal*

40.    Stays of removal are governed by a four-factor test. Courts must consider: (1) whether the applicant has shown a likelihood of success on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies.10 Of these factors, the first two are "the most critical."  *Kabenga v. Holder*, 76 F. Supp.3d 480, 482 (S.D.N.Y. 2015).

## FIRST CAUSE OF ACTION:

## PETITIONER DETENTION AND REMOVAL FROM THE UNITED STATES IS UNLAWFUL  AND MR. BARROS'S REMOVAL FROM THE UNITED STATES WOULD BE ILLEGAL AND CONTRARY TO THE INA AND APPLICABLE REGULATIONS

41.    Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

42.    The basis of Mr. Barros's detention and anticipated removal from the United States by the Respondent is a the Order of Removal entered on February 21, 2003.  *See* Exh. 3, Order of Removal.

43.    The Respondents initially detained Mr. Barros and placed him into removal proceedings on or about February 12, 2003. *See* Exh. 5, NTA.  At the time of his detention and the commencement of removal proceedings, Mr. Barros was traveling back to the United States from Ecuador.   Prior to his departure from the United States from the United States, Mr. Barros obtained advanced parole due to the fact that he had a pending application with immigration for adjustment of his status.

44.    Despite the fact that Mr. Barros had been granted advanced parole by immigration, he was unlawfully detained, questioned and placed into removal proceedings.

45.    The NTA charged the Petitioner as removable under INA §212(a)(7)(A(i)(I)-"Immigrant Without Documents"  and INA §212(a)(6)(C)(i)-"Fraud and Misrepresentation".  *See id.*

46.     The Order of Removal entered on February 21, 2003 found that the Petitioner was removal as charged pursuant to INA §212(a)(7)(A(i)(I)-"Immigrant Without Documents".   The Order of Removal did not find that Mr. Barros was removal as charged pursuant to INA §212(a)(6)(C)(i)-"Fraud and Misrepresentation".

47.    However, because Mr. Barros had been granted advanced parole, *see* Exh. 5, Form 512, when he arrived to apply for admission to the United States he was factually

not an "Immigrant without documents" and therefore was not removable pursuant to

INA §212(a)(7)(A(i)(I). Rather, the Petitioner was in possession of valid documents that

permitted him to travel abroad and reenter the United States.

48.     Moreover, the NTA issued by the Respondents did not satisfy the statutory

requirements of INA §239(a)(1) because it does not include a statement of "the time and

place at which the proceedings will be held."  *See* Exh. 5, NTA.   See INA

§239(a)(1)(G)(i). *See Pereira v. Sessions*, 138 S. Ct. 2105 (2018) (holding that a notice

that does not include time and place information is clearly by statutory definition not a

"notice to appear").

49.     The Order of Removal entered against the Petitioner is based upon a "gross

miscarriage of justice".  *Matter of Malone*, 11 I. & N. Dec. 730, 731-32 (BIA

1966).  Because the removal order resulted from a gross miscarriage of justice, it must

be deemed a legal nullity.  *See id*. at 731.  As a legal nullity, the removal order cannot

serve as a basis for Mr. Barros's detention and removal from the United States.

50. Petitioner's detention and imminent removal from the United States based solely on an

outstanding Order of Removal, predicated on a document that does not meet the

statutory definition of an NTA required to vest jurisdiction in the immigration court to

even initiate removal proceedings, violates the INA and its regulations.

**SECOND CAUSE OF ACTION**

**PETITIONER DETENTION AND REMOVAL FROM THE UNITED STATES IS
UNLAWFUL  AND MR. BARROS'S REMOVAL FROM THE UNITED STATES
WOULD BE ILLEGAL AND CONTRARY THE ADMINISTRATIVE
PROCEDURES ACT ("APA")**

51.    Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

52. The Petitioner's detention and imminent removal from the United States based solely upon an outstanding Order of Removal violates the APA.

53.  Under the Administrative Procedures Act, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. The reviewing court "shall…hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (E).

54.  In *Bowen v. Massachusetts*, 487 U.S. 879, 901, 903 (1988),  the Supreme Court explained that judicial review of administrative actions "should not be construed to  defeat the central purpose of providing a broad spectrum of judicial review of agency action" and that any alternative remedy advanced by the agency will not be adequate under §704 where the remedy offers only "doubtful and limited relief."

55. In this case, it is clear that the Order of Removal must be reviewed by this Court and found to be "arbitrary, capricious, an abuse of discretion and not in accordance with the law."  5 U.S.C. §§ 706(2)(A), (E).

56. As is discussed *supra*, the Order of Removal was entered against the Petitioner despite the fact that he was not removable as charged pursuant to  NA §212(a)(7)(A(i)(I)- "Immigrant Without Documents"  given the fact that he had been granted advanced parole.  In addition, the Order of Removal was based upon a document that failed to vest jurisdiction with the immigration court as it was not an NTA as defined by statute in

INA §239(a)(1) because it does not include a statement of "the time and place at which the proceedings will be held." *See* Exh. 5, NTA.   See INA §239(a)(1)(G)(i).

57. Due process protects a noncitizen's liberty interest in the adjudication of applications for relief and benefits made available under the immigration laws. *See Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (recognizing protected interests in the "right to seek relief" even when there is no "right to the relief itself"). The Petitioner was denied due process of law because the Order of Removal was entered despite the fact that he had a pending application to adjust his status and had sought and received advanced parole to travel outside of the United States. Upon return to the United States, the Petitioner was not afforded due process of law but rather detained and issued a document that by definition did not vest the immigration court with jurisdiction, and was not supported by any basis in law or fact.  This violated Mr. Barros's due process interest in his ability to continue with an application for adjustment of status that was pending at the time of the entry of an Order of Removal.

### THIRD CAUSE OF ACTION:

### PETITIONER'S REMOVAL VIOLATES DUE PROCESS UNDER THE U.S. CONSTITUTION

58.    Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

59.    Due process protects a noncitizen's liberty interest in the adjudication of applications for relief and benefits made available under the immigration laws. *See Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (recognizing protected interests in the "right to seek relief" even when there is no "right to the relief itself").

60.     Any efforts by ICE to remove Petitioner, without allowing him to avail himself of the procedures created by the INA and its regulations, violate and would violate due process.

## **REQUEST FOR ORAL ARGUMENT**

61.     Petitioner respectfully requests oral argument on this Petition

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter;

2. Order Petitioner's release from custody;

3. Order Petitioner's return to the New York City, such that he can meaningfully consult with his counsel and family;

4. Enjoin Respondents from moving the Petitioner from the New York City area while habeas proceedings are pending;

5. Issue a Writ of Habeas Corpus ordering Petitioner's release from immigration detention pending final resolution of this habeas proceeding;

6. In the alternative, issue a Writ of Habeas Corpus and order Petitioner's release within 10 days unless Respondents schedule a hearing before a neutral immigration judge to provide Mr. Barros a constitutionally adequate process to challenge his detention;

7. Issue a declaration that Petitioner's ongoing detention violates the Due Process Clause, the INA, and the APA;

8. Award Petitioner his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. §2412, or other statutes.

9.   Grant such further relief as the Court deems just and proper.

Dated this August 16, 2018

Respectfully submitted,

*/s/ Gregory P. Copeland (GC 1931)*

Seymour James, Jr., Attorney-in- Chief
Adriene Holder, Attorney-in-Charge, Civil Practice
Hasan Shafiqullah, Attorney-in-Charge, Immigration
Law Unit ("ILU")
Sarah Gillman, Supervising Attorney, ILU
Gregory Copeland, Supervising Attorney, ILU
Alina Charniauskaya, Of Counsel, ILU
Casey Dalporto, Of Counsel, ILU
THE LEGAL AID SOCIETY
199 Water Street – 3rd Floor
New York, NY 10038
Tel: 212-577- 3968
Fax: 646-365-9369
gcopeland@legal-aid.org

## <u>VERIFICATION PURSUANT TO 28 U.S.C. § 2242</u>

I am submitting this verification on behalf of the Petitioner because I am one of the

Petitioner's attorneys.  I have discussed with the Petitioner's legal team the events described

in this Petition.  On the basis of those discussions, on information and belief, I hereby verify

that the factual statements made in the attached Petition for Writ of Habeas Corpus are true

and correct to the best of my knowledge.

    Dated: August 15, 2018

                    */s/ Gregory P. Copeland (GC 1931)*
                    Gregory P. Copeland
                    Attorney for Petitioner